IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL RYAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-2608-N |
| | § | |
| THE CITY OF DALLAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

This Order addresses the City of Dallas's (the "City") motion to dismiss [36]. The Court denies the motion.

### I. ORIGINS OF THE DISPUTE

Plaintiff Michael Ryan's claims against the City arise from his encounter with officers of the Dallas Police Department ("DPD") on July 21, 2013. *See* Pl.'s Second Am. Compl. ¶¶ 9–38. Ryan was driving his car when he suffered an epileptic seizure. *Id.* ¶ 11. Ryan lost control of his car and struck several parked cars. *Id.* ¶ 12. As a result of the accident Ryan suffered two crushed disks in his back and a concussion from blunt force trauma to his head. *Id.* ¶ 35. A witness called 911 and the DPD dispatched multiple officers to the location of the accident. *Id.* ¶ 14. Officer Julie R. Munster assumed that Ryan was intoxicated, so she handcuffed Ryan and "forcefully threw him against her police cruiser." *Id.* ¶ 15. Officer Munster tightened the handcuffs "to the point that [Ryan's] hands swelled and turned blue." *Id.* DPD officers kept Ryan in handcuffs "even when [Ryan] blew a registered 0.00 BAC." *Id.* ¶ 16. Ryan attempted to explain to the officers that he was having a medical emergency

ORDER – PAGE 1

and that he was not under the influence of any drugs. *Id.* He asked for medical attention, but the officers denied his request. *Id.*

When Dr. Hsu, Ryan's wife and a medical doctor, arrived at the scene, she informed the DPD officers that Ryan was experiencing a medical emergency and that he needed medical attention. *Id.* ¶ 19. Dr. Hsu also informed the officers that she had eaten breakfast with Ryan a few minutes before the accident and that he had not been drinking or intoxicated. *Id.* ¶ 21. Officer Raymond Dominguez told Dr. Hsu that Ryan was intoxicated and would not receive any medical attention until after the officers took Ryan to Lew Sterrett Jail ("jail"). *Id.* ¶ 20. When an ambulance arrived on the scene, DPD officers waived the ambulance away and the paramedics did not examine Ryan. *Id.* ¶ 22.

Officer Dominguez took Ryan to jail where officials working for the City fingerprinted, booked, and questioned Ryan. Ryan gave breath and blood samples, both of which were negative for any alcohol or illegal or intoxicating drugs. *Id.* ¶¶ 23–26. This process took approximately three hours. *Id.* ¶ 27. Ryan repeatedly asked for medical attention, and informed officers and officials that he was experiencing severe pain and blurry vision. *Id.* The officers and officials refused Ryan's requests. *Id.* After booking, Ryan was taken to a holding room and placed with other inmates. *Id.* ¶ 30. He repeatedly asked for medical assistance, and was denied. *Id.* He stayed in the room for approximately five or six hours. *Id.* Officers then took Ryan to a general population cell, where his repeated requests for medical help were denied. *Id.* ¶ 31. Ryan did not receive medical treatment for his seizure or the injuries he sustained in the crash until a full day later, after his release from

ORDER – PAGE 2

jail. *Id.* ¶ 34. Ryan brought multiple claims against the City under 42 U.S.C. §1983, and the City moved to dismiss.

## II. THE COURT DENIES THE MOTION TO DISMISS

### *A. The Rule 12(b)(6) Standard*

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most

favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer*, 484 F.3d at 780. Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B. Municipal Liability Under Section 1983

"Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and

a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 694 (1978)). "*Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading." *Id.* "Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.*

"Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy. Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom." *Id.* at 579. A custom is defined as a "persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled . . . [that it] fairly represents municipal policy." *Id.* "While an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Id.* (citing *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id.* "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk

of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citation and punctuation removed).

### C. The Court Denies the City's Motion to Dismiss

Ryan alleges the Dallas City Council is the City's final policy maker regarding the conduct of its police officers. *See* Pl.'s Second Am. Compl. ¶ 44. Ryan claims the City has a custom of denying medical care to police detainees, a custom of failure to train regarding medical care to police detainees, and a custom of making arrests without probable cause, or of continuing to detain arrestees after probable cause has been negated. *See id.* ¶¶ 43–50, 76–83, 98–105. Moreover, Ryan alleges that as a policy maker the Dallas City Council was "deliberately indifferent to the known and obvious risks" that these policies and customs would lead to the deprivation of its citizens' Fourteenth Amendment rights. *See id.* ¶¶ 50, 83, 105. Finally, Ryan claims these customs were the moving force that caused the violation of his constitutional rights. *See id.* ¶¶ 46, 79, 101.

*1. Ryan Adequately Pleads His Claims that the City Has a Custom of Denying Medical Care To Police Detainees and that the City Has a Custom of Failing To Train Regarding Medical Care to Police Detainees.* – To support his claims that the City has a custom of denying medical care to police detainees and that the City has a custom of failing to train regarding medical care to detainees, Ryan alleges (1) in the past five years approximately nine federal lawsuits have been filed in this Court alleging a failure to provide

ORDER – PAGE 6

medical care to detainees; (2) the City has received other complaints of denial of medical care that the City failed to address or addressed internally; and (3) the City approved the settlement of a lawsuit by George Earl Pogue, who alleged DPD officers denied him medical care. *Id.* ¶ 44; *see George Earl Pogue v. City of Dallas, Tex.*, Civil Action No. 3:13-CV-04702-B (N.D. Tex. filed Aug. 25, 2014) ("*Pogue*").

Ryan also filed supplemental briefing with the Court that details DPD officers' recent interaction with Leslie Hanson. *See* Pl.'s Suppl. Br. 1–2 [46]. In the late afternoon, Hanson was found lying down next to her car in the parking lot of the Ashton Apartments. Hanson was having a stroke. *See id.* EMT personnel had placed Hanson on a stretcher and were taking her to a hospital for emergency medical care when DPD officers at the scene intervened and took custody of Hanson. *See id.* The officers wrongfully assumed Hanson was intoxicated or on drugs. *See id.* They took her to the "drunk tank." *See id.* Eventually officials took her to the hospital for treatment of her stroke, which required invasive brain surgery and a 4-day stay in the intensive care unit. *See id.*

The City argues that the Court should not look to the number of lawsuits filed when determining whether a custom exists because the Court can only speculate as to the merits of the suits. Def.'s Mot. to Dismiss 7–10 [36]. The City identified two such cases that have been filed with this Court in the last five years, and in one suit the plaintiff conceded claims of denial of medical care and in the other case a jury found there was no denial of medical care to the plaintiff. *See id.* at 8. The City cites a case from the Seventh Circuit, *Strauss v.*

*City of Chicago*, that holds allegations of complaints about similar conduct are insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all." 760 F.2d 765, 768–69 (7th Cir. 1985). The City also cites authority from New York that holds ten civil rights complaints about an alleged custom or practice over ten years is "paltry" in a large city and therefore not sufficient evidence to show the existence of a custom. *Walker v. City of New York*, 2014 WL 1259618, at *3 (S.D.N.Y. 2014) ("The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim.").

Moreover, the City argues that the Court should not consider the case *Pogue* when deciding if the City has a custom of denying medical care to police detainees because the City settled that suit. *See* Def.'s Mot. to Dismiss 9–11. The City cites authorities from New York and California for the proposition that settlements in other cases are insufficient to permit an inference of a custom. *See Green v. Baca*, 226 F.R.D. 624, 640–41 (C.D. Cal. 2005), *order clarified*, 2005 WL 283361 (C.D. Cal. 2005) ("[T]he existence of a policy or custom of over-detaining inmates is a central element of plaintiff's claim. Without proving this fact, plaintiff cannot establish liability. Rule 408 clearly prohibits the introduction of evidence of [settlements] to prove liability."); *Morris v. City of New York*, 2013 WL 5781672, at *11 (E.D.N.Y. 2013), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d

Cir. 2015) ("The fact that two of the defendants as well as a non-defendant supervising officer have had civil suits brought against them in the past that resulted in settlements is not even evidence of wrongdoing, let alone that the City has a custom or policy that fosters or results in wrongdoing.").

The City's arguments are unavailing, however, because Ryan's factual allegations are enough "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. The City's reliance on *Strauss* is misplaced. After the U.S. Supreme Court held there is no heightened pleading standard in municipal liability cases in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), "[t]he district courts within the Seventh Circuit consistently have read *Leatherman* to nullify the pleading requirement set forth in *Strauss*." *Carney v. White*, 843 F. Supp. 462, 469 (E.D. Wis. 1994), *aff'd sub nom. Carney v. Vill. of Darien*, 60 F.3d 1273 (7th Cir. 1995). Moreover, and most importantly, Ryan has done more than allege that others have brought complaints against the City, as the plaintiff did in *Strauss*. Ryan has provided the Court with the sworn affidavit of Thomas LaCour regarding Hanson's encounter with DPD officers.

Although Federal Rule of Evidence ("FRE") 408 prohibits the introduction of the City's settlement of George Earl Pogue's law suit to prove the validity of Ryan's claims, FRE 408 explicitly allows courts to admit such evidence "for another purpose." FRE 408(b). In this case, the settlement shows that the City Council was aware of facts that could allow

the City Council to infer the substantial risk of serious harm that could occur from denying medical care to police detainees and failing to train officers regarding medical care to detainees. And Ryan's allegations allow the Court to conclude that it is at least plausible that the City did infer from the facts of the settlement the substantial risk of serious harm, that the City chose to do nothing despite its awareness of that substantial risk, and that the City's inaction was the "moving force" that caused the violation of Ryan's constitutional rights. *See Piotrowski*, 237 F.3d at 578. Thus, Ryan's allegations of the existence of the customs, along with Ryan's claim that as a policy maker the Dallas City Council was "deliberately indifferent to the known and obvious risks" of these customs, provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

***2. Ryan Adequately Pleads His Claims that the City Has a Custom of Making Arrests Without Probable Cause or Continuing to Detain Arrestees After Probable Cause Has Been Negated.*** – In addition to providing the affidavit of Dr. Thomas LaCour regarding Hanson's recent encounter with DPD officers, Ryan alleges (1) in the past five years approximately twenty-three federal lawsuits were filed with the Court alleging a false arrest or illegal seizure; (2) the City has received other complaints of false arrests that were either dealt with internally or not addressed at all; (3) and the City Council approved the settlement of five lawsuits in which the plaintiffs alleged unlawful seizure. *See* Pl.'s Second Am. Compl. ¶ 99. Ryan also alleges that, according to *The Wall Street Journal*, Dallas has paid out a total of $6.9 million dollars to victims of police misconduct between 2010 and 2015.

Pl.'s Compl. ¶¶ 45, 78, 100. And Dallas paid out $3.4 million of that in 2014, compared with just $200,550 in 2010. *See id.*

Because Ryan's allegations of a custom of unlawful arrests mirror his denial of medical care and failure to train allegations, the City reiterated its arguments discussed above to show that Ryan's claims warrant dismissal. But the Court finds, as discussed above, that Ryan's allegations survive the City's motion to dismiss because Ryan has provided "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, the Court denies the City's motion to dismiss.

## CONCLUSION

The Court denies the City's motion to dismiss.

Signed July 27, 2016.

_____
David C. Godbey
United States District Judge